UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALLIANCE FOR PROPERTY RIGHTS AND FISCAL RESPONSIBILITY; BRYON REED; CARL AND LINDA TAYLOR, husband and wife; HAROLD AND RITA CARLSON, husband and wife; JEFF AND JACKIE WALBOM, husband and wife, TED AND CAROL WHITEHEAD, husband and wife; ROBERT JOHNSON; JIM AND PENNY DIXON, husband and wife; PAMELA LYON; WAYNE AND ANN JENSEN, husband and wife; and ELMER AND SANDRA CHERRY, husband and wife,<br><br>                Plaintiffs,<br>    v.<br><br>CITY OF IDAHO FALLS, a municipal corporation, and IDAHO FALLS POWER, a department of the City of Idaho Falls,<br>                Defendants. | Case No. 4:12-cv-146-BLW<br><br>MEMORANDUM DECISION AND ORDER |

### INTRODUCTION

The Court has before it plaintiffs' Motion for Attorneys' Fees (Dkt. 33). The matter is fully briefed and at issue. The Court finds that oral argument would not significantly assist the decisional process and will rule on the motion without a hearing.

Having thoroughly reviewed the pleadings and being familiar with the record, the Court will grant the motion in part, and deny it in part. More specifically, the Court will award attorneys' fees and costs in the amount of $72,469.06, rather than the nearly $110,000 plaintiffs request in this motion.

## BACKGROUND

Plaintiffs own rural property outside the Idaho Falls city limit. They sued to prevent the City of Idaho Falls from erecting high-voltage power lines on their properties. Their core position is that the City lacks authority to condemn property outside its geographic limits.

The lawsuit began in state court in March 2012, when plaintiffs filed their complaint and an application for a temporary restraining order. *See* Dkts. 1-2, 1-5. Plaintiffs alleged that, shortly before they sued, the City had entered some of their properties – all of which were along the intended new power-line route – and placed stakes, drilled test holes, and took soil samples. *Compl.*, Dkt. 1-2, ¶ 18.

The state court granted plaintiffs' application for a temporary restraining order, which prohibited the City "from exercising any power of eminent domain to take or condemn any property owned by any of the Plaintiffs . . . ." *Mar. 12, 2012, State Court Order,* Dkt. 1-12, at 2. The state court also scheduled an order-to-show-cause hearing for March 26, 2012, which required the City to appear and show cause as to why a preliminary injunction should not issue. *Id.* A few days before this hearing, however, the City removed the action to federal court. As the basis for removal, the City stated: "Plaintiffs seek relief under 42 U.S.C. § 1982 for alleged violation(s) of the 14th

Amendment of the U.S. Constitution." *Dkt.* 1 ¶ 3. In addition to their § 1983 claim, plaintiffs alleged two other claims for relief – a request for a declaratory judgment and a request for injunctive relief.[1]  *See* Dkt. 1-2.

After this case was removed to federal court, both parties assured the Court that plaintiffs' claims were ripe for adjudication in federal court. *See Supp. Briefs,* Dkts. 26, 27. The City stated that plaintiffs' complaint "states causes of action under Idaho State law, substantive due process claims, and claims arising under the Takings Clause" and that "[e]ach of these causes of action is ripe for review." *City's Brief in Support of Court's Jurisdiction,* Dkt. 26, at 1. The parties also determined that this case presented purely legal issues and would be best resolved by summary judgment. *See, e.g., Litig. Plan,* Dkt. 13.

In September 2012, the Court granted summary judgment to plaintiffs, determining that the Idaho legislature had not delegated extraterritorial takings power to cities. *See Mem. Decision & Order,* Dkt. 31. Plaintiffs now ask for an attorneys' fee award under 42 U.S.C. § 1988(b).

## ANALYSIS

1. **Plaintiffs' Entitlement to Attorneys' Fees**

Prevailing parties on federal civil rights claims may be awarded reasonable attorneys' fees under 42 U.S.C. § 1988(b). This statute provides that "[i]n any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may

---

[1] As the City points out, injunctive relief is a remedy – not a separate claim for relief.

allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Section 1983 of Title 42, in turn, protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

In light of the congressional intent behind § 1988(b)'s fee-shifting provision, the Supreme Court has held that a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal quotation marks omitted). So although the statute sounds like the district court's decision to award fees is fully discretionary, this is not truly the case. Rather, once a district court determines no special circumstances would render an award unjust, its discretion is "tightly cabined." *N.J. Coalition of Rooming & Boarding House Owners v. Mayor of Asbury Park*, 152 F.3d 217 (3d Cir. 1998).

In deciding whether to award fees requested under § 1988(b), this Court first asks whether the plaintiffs prevailed in the litigation and then asks, more specifically, whether plaintiffs prevailed "under a fee-generating legal 'right.'" *Gerling Global Reinsurance Corp. of Am. v. Garamendi*, 400 F.3d 803, 807 (9th Cir. 2005). Regarding the first question, the Supreme Court has explained the prevailing-party analysis as follows:

> [T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. . . . In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the

MEMORANDUM DECISION AND ORDER - 4

> parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

*Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992) (quoted in *Gerling,* 400 F.3d at 806, internal citations omitted here).

Plaintiffs prevailed here. When the Court determined that the City lacked legal authority to condemn plaintiffs' properties, the City "modified its behavior" in a way that directly benefits the plaintiffs – it did not move forward with condemnation proceedings. Thus, the Court's judgment materially altered the legal relationship between the parties.

The next question is whether plaintiffs prevailed on a "fee-generating" right. The City argues that the fee request falters here, given that the Court did not directly resolve plaintiffs' constitutional claim. The Supreme Court, however, has clarified that in precisely this sort of situation, plaintiffs may still be viewed as prevailing parties under the fee statute. In *Maher v. Gagne*, 448 U.S. 122 (1980), the Court explained that

> [i]n some instances . . . the claim with fees may involve a constitutional question which the courts are reluctant to resolve if the non-constitutional claim is dispositive. In such cases, if the claim for which fees may be awarded meets the 'substantiality' test, attorney's fees may be allowed even though the court declines to enter judgment for the plaintiff on that claim, so long as the plaintiff prevails on the non-fee claim arising out of a "common nucleus of operative fact."

*Id.* at 132 n.15 (internal citations to *Hagans v. Levine*, 415 U.S. 528 (1974) and *United Mine Workers v. Gibbs,* 338 U.S. 715, 725 (1996) omitted).

Thus, the question here is whether plaintiff's second claim for relief (their constitutional claim brought under 42 U.S.C. § 1983) is both substantial and arises under a common nucleus of operative fact with the dispositive, non-fee-supporting claim

addressed by the court.  *See Gerling*, 400 F.3d at 808.

Both prerequisites are satisfied.  First, the facts underlying all of plaintiffs' claims are the same.  In a nutshell, plaintiffs disputed the City's legal authority to erect power lines on their properties.

Second, plaintiff's constitutional claim is substantial.  "A claim is constitutionally insubstantial if it is 'essentially fictitious . . . wholly insubstantial . . . obviously frivolous . . . [or] obviously without merit.'"  *Id.* (quoting *Hagans*, 415 U.S. at 537-38).  Or, stated differently, "[a] claim is insubstantial only if its unsoundness so clearly results from the previous decisions of [the Supreme Court] as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy."  *Hagans,* 415 U.S. at 538.

At the outset of this litigation, the City essentially conceded that plaintiffs' due process claim was "substantial."  The City said that that plaintiffs' complaint – specifically paragraph 31[2] – "raises a substantive due process claim" and, further, that "[s]ince plaintiffs have alleged an actual threat of the Defendants in taking their property without legal authority, the substantive due process claim is justiciable at this point."  *City's Brief in Support of Court's Jurisdiction,* Dkt. 26, at 3 (*citing Equity Lifestyle Props., Inc. v. County of San Luis Obispo*, 548 F.3d 1184, 1194 n.17 (9th Cir. 2008);

---

[2] Paragraph 31 of the complaint alleges:

> Because the Defendants lack any actual legal authority to exercise the powers of eminent domain against the Plaintiffs' property for the purpose of erecting an electrical utility transmission system, their actions, unless restrained, will result in a violation of the Plaintiffs' constitutional rights to due process, for which the Defendants would be liable to Plaintiffs under 42 U.S.C. § 1983.

*Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528 (2005); *and Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 n. 1 (9th Cir. 2007)).

The City now reverses course, arguing that the complaint fails to allege a substantive due process claim, and, further, that any such claim is unripe. The City does not explain this reversal, and the Court concludes that the City is judicially estopped from asserting these new, directly contradictory arguments. *See generally Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012). Moreover, even assuming judicial estoppel does not apply here, the City has not cited any Supreme Court authorities that would clearly foreclose plaintiffs' due process claim or demonstrate that there is no room for debating its soundness. *See Hagans,* 415 U.S. at 538.

Plaintiffs' constitutional claim is also ripe for adjudication. As the Ninth Circuit has explained, "ripeness has two components: constitutional ripeness and prudential ripeness." *In re Coleman*, 560 F.3d 1000, 1004 (9th Cir. 2009). Constitutional ripeness is jurisdictional; it requires, at a minimum, "injury in fact, causation, and a likelihood that a favorable decision will redress the plaintiff's alleged injury." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010). Prudential ripeness concerns, on the other hand, may be waived. *See, e.g., Adams Bros. Farming, Inc. v. Cnty. of Santa Barbara*, 604 F.3d 1142, 1148 (9th Cir. 2010).

Here, the Court need not decide any prudential ripeness concerns because this case is constitutionally ripe for adjudication. As the City explained earlier, "[p]er the Complaint, the Defendants' exercise of eminent domain power to acquire the easement over Plaintiffs' properties is not speculative or conjectural, but imminent; the threat of

MEMORANDUM DECISION AND ORDER - 7

condemnation of their property is actual." *City's Brief in Support of Court's Jurisdiction*, Dkt. 26, at 3 (citin*g Lopez*, 630 F.3d at 785 for the proposition that the injury in fact may be either actual *or* imminent, so long as it is not merely conjectural or hypothetical.).

In sum, plaintiffs alleged a "substantial" constitutional claim for purposes of the fee-award statute. As such, they are entitled to a fee award under § 1988(b).

**2.     The Amount of the Fee Award**

Having decided that plaintiffs are entitled to a fee award under § 1988(b), the Court must assess the amount of fees to award. Once again, this involves a two-step process. First, the Court must calculate the "lodestar figure" by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate. *See, e.g., Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). Second, the Court must decide whether to enhance or reduce the lodestar figure based on several factors – known as the *Kerr* factors – to the extent those factors are not already subsumed in the initial lodestar calculation. *Id.* The relevant *Kerr* factors are: (1) time limitations imposed by the client or the circumstances; (2) the amount involved and the results obtained, (3) the experience, reputation, and ability of the attorneys, (4) the "undesirability" of the case, (5) the nature and length of the professional relationship with the client, and (6) awards in similar cases. *See Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975).[3]

---

[3] There are six additional Kerr factors: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, and (6) whether the fee is fixed or contingent. *Kerr*, 526 F.2d at 70. Factors one through five, however, are subsumed in the lodestar calculation. *See Morales v. City of San Rafael*, 96 F.3d 359, 364 n. 9 (9th Cir. 1996). Further, the Ninth Circuit, extending *City of*

### A. Reasonable Hourly Rates

To determine a reasonable hourly rate, the district court looks to hourly rates prevailing in the relevant legal community for similar work performed by attorneys of comparable skill, experience, and reputation. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (per curiam). The "relevant legal community" is generally the forum in which the district court sits. *Mendenhall v. NTSB*, 213 F.3d 464, 471 (9th Cir. 2000).

Plaintiffs' complaint was filed in the Eastern Division of the District of Idaho. Defendants therefore contend that the "relevant community" is Pocatello, Idaho, the location of the Court's eastern divisional courthouse. Plaintiffs argue that a broader community should be considered, namely "the State of Idaho, including Boise and Pocatello." *Hearn Aff.*, Dkt. 35, ¶ 7. Plaintiffs then ask the Court to use Boise rates – rather than Pocatello rates – in the lodestar calculation.

The Court is not persuaded that the entire state, or even Boise, is the relevant community. Rather, the relevant community is Pocatello, where the complaint was filed and prosecuted. *Accord Jadwin v. County of Kern*, 767 F. Supp. 2d 1069, 1125-26 (E.D. Cal. 2011) (holding that that Fresno Division of the Eastern District of California, rather than the Sacramento Division, was the relevant legal community to be used in the lodestar calculation).

Defendants concede that plaintiffs have provided evidence that the reasonable

---

*Burlington v. Dague*, 505 U.S. 557, 567 (1992), held that the sixth factor, whether the fee is fixed or contingent, may not be considered in the lodestar calculation. *See Davis v. City & County of San Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993).

rates in Pocatello are $190 to $225 for partners and $150 to $185 for associates.  *See Response,* Dkt. 40, at 11.  Based on Mr. Hearn's affidavit, which details the attorneys' and legal assistants' experience, the Court determines that counsel and the legal assistants are entitled to the following rates:  Richard Hearn ($225 per hour); Eric Olsen ($225 per hour), Carol "Tippi" Volyn ($200 per hour); Brent Whiting ($185 per hour); Matthew Stucki ($90 per hour); and Pam Mottishaw ($90 per hour).

### B. Hours Reasonably Expended on the Litigation

Next, the Court finds that all the time spent on this matter – 356.4 hours – was reasonable.  The City argues that 76.3 hours of this total (roughly 21% of the 356.4 hours) should be deemed "unreasonable" because it is related to plaintiffs' efforts to obtain a temporary restraining order.  The City says a temporary restraining order was unnecessary because it could not exercise its eminent domain powers anyway, given that it had not successfully prosecuted a condemnation action.

The Court is not persuaded for two reasons.  First, and most importantly, the Court has reviewed the time entries the City challenges.  *See Ex. A to Evett Aff.*, Dkt. 40-2.  The bulk of these entries deal with drafting the complaint and researching or drafting arguments on legal theories that were foundational to the plaintiffs' summary judgment motion.  As plaintiff's counsel points out, if they did not perform this work in connection with the temporary restraining order, they would have done it eventually anyway, in preparing the motion for summary judgment.

Second, plaintiffs did not unreasonably pursue a temporary restraining order.  It is true, with the benefit of hindsight, that plaintiffs may have been able to avoid the need for

**MEMORANDUM DECISION AND ORDER - 10**

requesting a temporary restraining order and, in particular, the April 20, 2012 hearing before this Court. Nonetheless, in opposing plaintiffs' request for a restraining order, the City said only that it did not "intend" to file an eminent domain action during the pendency of this case; it did not unequivocally say it would not file such an action. *Response,* Dkt. 9, at 3; *see also Flowers Aff.,* Dkt. 9-1, ¶ 16 ("The City has no plans to file eminent domain actions against Plaintiffs during the pendency of this litigation."). That point was nailed down at the April 20, 2012 hearing before this Court. *See Minute Entry*, Dkt. 12 ("Defendants orally stipulated that they would not commence any condemnation proceedings related to plaintiffs' properties during the pendency of this proceeding in federal court. Based on that assurance, plaintiffs withdrew their motion for a temporary restraining order."). The Court therefore cannot fault the plaintiff for failing to handle the preliminary proceedings more efficiently.

The Court will therefore award plaintiffs' counsel the hourly rates identified above for all their time spent on this case. The lodestar calculation for plaintiffs' counsel is as follows:

| Attorney or Assistant | Hourly Rate   x | Hours   = | Fees |
|---|---|---|---|
| Whiting | $185 | 183.5 | $33,947.50 |
| Volyn | $200 | 3.2 | $    640.00 |
| Olsen | $225 | 64.7 | $14,557.50 |
| Hearn | $225 | 100.9 | $22,702.50 |
| Stucki | $ 90 | 3.4 | $    306.00 |
| Mottishaw | $ 90 | .7 | $     63.00 |
| **Total** | | **356.4** | **$72,216.50** |

"The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower court[ ] that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir.2000).  This is not a rare or exceptional case where the lodestar amount is unreasonably low or high.  The Court will therefore award plaintiffs' counsel the sum of $72,216.50 in attorneys' fees under 42 U.S.C. § 1988(b).  Additionally, the City does not contest plaintiffs' request for an additional $252.56 in costs.  Thus, the Court will award plaintiffs the total sum of $72,469.06.

## ORDER

**IT IS ORDERED THAT** Plaintiffs' Motion for Attorneys' Fees is **GRANTED in part** and **DENIED in part.**  The Motion is **GRANTED** as plaintiffs are awarded $72,469.06 in fees and costs.  The Motion is **DENIED** to the extent it seeks additional sums.

DATED: February 12, 2013

B. Lynn Winmill
Chief Judge
United States District Court